**James Lewis MEANS II, Appellant,**

v.

**Mary Kathleen MEANS, Appellee.**

No. 8610.

Court of Civil Appeals of Texas, Amarillo.

March 29, 1976.

Edwards & Associates, James R. Edwards, Lubbock, for appellant.

Allison & Davis, John H. Davis and Andrew J. Kupper, Jr., Levelland, for appellee.

ELLIS, Chief Justice.

In this divorce action, the husband-appellant has appealed from that portion of the judgment dividing the property of the parties. Also, the wife-appellee, by cross-points, has challenged certain aspects of the property division. Affirmed.

The suit was brought on August 14, 1974, by Mary Kathleen Means, petitioner-appellee, against her husband, James Lewis Means II, respondent-appellant, on the

grounds of "insupportability," and, alternatively, on grounds of cruelty. The husband's answer, filed on January 2, 1975, included a general denial and cross-action. The parties were married on November 26, 1969, and separated on or about August 11, 1974. The husband was engaged in an aerial crop-spraying business, known as Means Flying Service, while the wife performed the duties of a housewife, did some bookkeeping for the crop-spraying business and occasionally acted as a "flagman" for her husband as he conducted spraying operations. The parties will be herein referred to as "husband" and "wife."

The suit was tried before the court without a jury on January 29, 1975. On April 28, 1975, the court entered its decree granting the wife a divorce; appointed her as managing conservator and the husband as possessory conservator of a minor child; provided for child support; and divided the property of the parties. Both parties filed a motion for new trial, and the husband moved for findings of fact and conclusions of law. On May 10, 1975, the court amended its decree to include the disposition of certain property omitted from the original decree.

In its findings of fact and conclusions of law, the trial court designated certain items of property as the husband's separate property, with a total value of $124,140.91, while the property designated as the wife's separate property was valued at the total sum of $3,175.00. The total value of the community estate was $122,859.64, and community liabilities were in the total amount of $75,725.63. It is noted that the court found that the community estate included a 96 acre tract of land in Jack County, Texas, valued at $14,500.00 and an 80 acre farm together with improvements and equipment located in Hockley County, Texas, valued at $35,701.81 (with $5,400.00 indebtedness thereon, shown as a part of the liabilities of the community estate). Also four bank accounts in the total sum of $21,651.26 (prior to deduction for an offset allowed in the judgment) were included as a part of the community property. The trial court fur-

ther found that three lawsuits for damages allegedly arising out of the spraying operations were, at the time of the trial, pending against the community estate; that insurance coverage for each occurrence in the sum of $25,000.00 was maintained by the husband; and that recovery of any amounts in excess of the insurance coverage is unlikely.

The parties complain only of the portion of the decree dividing the property. The husband raises five points of error. The wife replies and raises three cross-points.

The husband's points of error numbers 1, 3, and 4 directly attack the exercise of discretion by the trial court in its disposition of the community property and liabilities. Although the value of the net community estate computed from the findings of fact was $47,134.01, these findings did not include certain community property consisting of furnishings, equipment and furniture that the wife had in her possession. On the face of the decree it appears that the wife received a net value of approximately $32,733.42 in community property, and the husband received a net value of approximately $16,261.00 from the community estate. The husband contends that the trial court made approximately a two-thirds, one-third division of the net community estate with the wife receiving the larger portion, and that such division is not supported by the evidence and is a grave abuse of discretion.

Under the provisions of the judgment, the trial court awarded to the wife: the 96 acre tract of land (community) located in Jack County, Texas; the sum of $6,433.42, representing one-half of the $12,866.85 remaining from community bank account funds (after deducting from the total of $21,651.26 in community bank accounts the sum of $8,784.41 as an apparent offset in the husband's favor claimed by him for funds taken from his "personal account and used for community purposes" as shown in his First Amended Inventory, Appraisal, and List of Liabilities); all household furniture in her possession; clothing and personal effects of her and the minor child; a sewing machine; and the sum of $10,000.00

to be paid in cash by the husband. The trial court further awarded to the wife certain items claimed by her as her separate property having a total value of $3,175.00.

Under the judgment, the husband was awarded: the 80 acre farm (community) in Hockley County, Texas, with improvements and equipment; the sum of $6,433.42, representing one-half of the $12,866.85 remaining from community bank account funds, after allowance of the offset above described; property designated as husband's separate property including all items of business property (from Means Flying Service, the crop-spraying enterprise); certain household items; accounts receivable valued at $40,496.80; a Keogh retirement plan; a 1974 automobile; separate property bank accounts totaling approximately $49,900; separate residential property (including a residence in Ropesville, Texas, and a house and lot in Carlsbad, New Mexico); and certain separate personal property valued by the husband at $870. Also, the husband was ordered to pay all community debts and liabilities up to and including the date of the divorce.

█ The statutory provision governing the court's action in dividing the property is Tex. Family Code Ann. § 3.63, which sets out ". . . the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party . . . ." It is not required that the property be divided equally. *Reaney v. Reaney,* 505 S.W.2d 338 (Tex.Civ.App.–Dallas 1974, no writ); *Keene v. Keene,* 445 S.W.2d 624 (Tex.Civ.App.–Dallas 1969, writ dism'd). Also, in making a division of the property the court may consider the disparity of the earning powers of the parties. See 3 O. Speer, Marital Rights in Texas, § 835, pp. 178–179 (4th ed. 1961); *Roye v. Roye,* 404 S.W.2d 92 (Tex.Civ.App.–Tyler 1966, no writ). Moreover, the broad discretion possessed by the trial court in the division of property on divorce will be disturbed only when an abuse of discretion is shown. *Bell v. Bell,* 513 S.W.2d 20 (Tex.1974); *Hedtke v. Hedtke,* 112 Tex. 404, 248 S.W. 21 (1923);

*Wilkerson v. Wilkerson,* 515 S.W.2d 52 (Tex. Civ.App.–Tyler 1974, no writ).

█ We consider it significant in the division of the property that the husband was awarded all property connected with Means Flying Service. The evidence revealed that the flying service produced substantially all of the community income.

After the parties separated, the wife took a position as a secretary-bookkeeper from which she earned about $100 per week. The property awarded to the wife is not of a nature that will produce a substantial amount of income. She has had no business experience except in aid of her husband in Means Flying Service. She must rely on her salary as a secretary-bookkeeper as her primary source of income. The trial court found that the husband "is capable of and is presently earning an annual income far in excess" of that of the wife. This finding is clearly supported by the evidence.

The husband maintains that the trial court should not have required him to assume and pay all community debts of the parties. In view of the difference in business experience and income-producing capacity of the parties, the trial court was well within its proper exercise of discretion not only in making the unequal division of community property but also in determining that the husband should be liable for the debts of the community estate. Additionally, we note that a substantial portion of the debts is connected with the business operations of the husband.

█ The husband also contends that the trial court should have offset the community assets against the potential community liability resulting from claims and lawsuits for damages arising out of crop-spraying operations. There was no testimony as to the relative merits of these claims, but only testimony that the claims were made, and that claims in the past had been settled within the insurance coverage up to $25,000 in each case after a $1,000 deductible.

In connection with this contention, the husband points to Tex. Family Code Ann. § 5.61(d) which provides that the communi-

ty property is subject to the tortious liability of either spouse incurred during marriage. The claims against the principal business of the husband were not reduced to judgments in specific amounts, and there is a lack of proof as to the precise nature of the claims and suits. It appears that the husband did not meet the burden of establishing these claims or their nature with sufficient certainty to enable the trial court to give recognition to the alleged potential liability as a specific sum of offset against the community property. It is our opinion that the nature of the evidence submitted with respect to the potential liabilities as revealed by the record was so uncertain and speculative that the trial court was justified in its determination that the husband's contended offset for the contingent liabilities should not be allowed. The trial court was entitled to consider the contingent liability situation along with various other factors with respect to arriving at a "just and right" overall division of the property and in assigning responsibility for contingent liabilities. Moreover, we find no showing of an abuse of discretion by the trial court, in the light of all the circumstances, in its determination of this aspect of the case.

Considering the circumstances of the parties and the nature of the property involved, as shown by the record as a whole, we cannot say that the trial court abused its discretion in making the division of the community property. Points of error numbers 1, 3 and 4 are overruled.

In his second point, the husband contends that the trial court erred in awarding to the wife the 96 acre tract of land which he insists is his separate property. It is well settled that there is a rebuttable presumption that real property acquired by the husband or wife during marriage is community property. Tex. Family Code Ann. § 5.02; *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620 (1935); *Wadsworth v. Cole,* 265 S.W.2d 628 (Tex.Civ.App.–El Paso 1954, no writ); *Strickland v. Pilgrim,* 300 S.W. 215 (Tex.Civ.App.–Waco 1927, no writ). Also, see 1 O. Speer, Marital Rights of Texas, § 395, pp. 581–582 (4th ed. 1961).

The 96 acre tract was purchased in February, 1974, during the marriage of the parties. The purchase price was paid by a check in the amount of $14,500 drawn on the Means Flying Service Account, a community bank account. The testimony concerning the origin of the funds in the account from which the purchase was made was conflicting and uncertain. There was evidence that funds in the account asserted to be separate had been commingled with community funds. If the funds are so commingled that the separate and community cannot be distinguished the account is regarded as a community account. *Smith v. Buss,* 135 Tex. 566, 144 S.W.2d 529 (1940); *Rippy v. Rippy,* 49 S.W.2d 494 (Tex.Civ. App.–Austin 1932, writ ref'd); *Moore v. Moore,* 192 S.W.2d 929 (Tex.Civ.App.–Fort Worth 1946, no writ). Under the record we are unable to conclude that such funds were sufficiently traced as the husband's separate property and not commingled with community property to overcome the presumption that the account was community property. Based upon the foregoing, we cannot say that the trial court erred in finding the 96 acre tract to be community property and in awarding the property to the wife. The husband's second point of error is overruled.

In the husband's fifth point of error he asserts that the decree is not supported by the evidence. In the light of the foregoing discussion and from a review of the record as a whole, it is our opinion that the decree is amply supported by the evidence. Point of error number 5 is overruled.

We next consider the wife's cross-points of error. In her first cross-point the wife complains that the trial court erred in permitting the husband to submit an amended inventory and appraisal after both parties had rested and closed and in basing its division of property on the amended inventory and appraisal. After both parties had rested and closed, the trial court required that the husband submit an inventory and appraisal "under oath" by the husband. Although the husband had on file at the time of trial an inventory and appraisal

signed and sworn to by his attorney, the trial court did not consider it adequate. The trial court stated further that it would grant the divorce at the time the property was divided "and if we need another hearing on it, we will come back here Friday morning of this week." There was further discussion in open court between the husband's attorney and the trial court concerning the content and form of the inventory and appraisal to be filed. It appears that the wife's attorney was present during the discussion, and he made no objection to the procedure whereunder the court would subsequently receive the husband's sworn inventory and appraisal, nor did he make any statement or objection concerning the apparent likelihood that the trial court would consider the husband's amended inventory and appraisal in making the decision as to the property division.

The trial date was January 29, 1975. The husband filed his First Amended Inventory, Appraisal, and List of Liabilities on February 24, 1975. The certificate signed by the husband's attorney shows that the wife's attorney was served with a copy of the amended inventory and appraisal on February 24, 1975, and a copy of the brief filed in support of the amended inventory and appraisal was mailed to the wife's attorney on February 28, 1975. The decree of divorce was signed on April 28, 1975, and an amended decree of divorce was signed and entered on May 10, 1975. Both the original decree and the amended decree contained various references to the husband's first amended inventory and appraisal. The only significant difference between the original and amended decree was the addition of a provision for disposing of an omitted item of property in the amended decree. The wife's motion for new trial was filed May 9, 1975, and no specific reference or assignment of error was made in the motion to the actions of the trial court of which she now complains. The wife's attorney did not request that the case be re-opened for cross-examination or for the development of testimony in rebuttal to the husband's amended inventory and appraisal. There was no written reply or response of any kind to the husband's amended inventory and appraisal filed with the court. The amended decree was entered approximately two and one-half months after the sworn amended inventory and appraisal was filed and the copy thereof served upon the wife's attorney. The husband's attorney requested the court to make and file findings of fact and conclusions of law, and the court filed its findings and conclusions on June 24, 1975. The wife neither filed objections to the findings and conclusions nor requested additional or amended findings. It was quite apparent that the trial court had considered and referred to such amended inventory and appraisal in the judgment and in the findings and conclusions. In view of these circumstances, it is our opinion that since the errors complained of were raised for the first time on appeal, the wife has waived the errors complained of in cross-point number 1. *Blackmon v. Trail,* 12 S.W.2d 967 (Tex.Comm'n App.1929, jdgmt adopted). Also, see *Griffith v. State,* 391 S.W.2d 428 (Tex.Crim.App.1965). The wife's cross-point number 1 is overruled.

In her second cross-point of error, the wife complains that the trial court erred in awarding her $6,433.42 rather than $10,825.63 which, the wife contends, represents one-half of the total of "community personal property bank accounts" as listed in Respondent's First Amended Inventory and Appraisal. The amount awarded to the wife by the amended decree was ordered "to be paid to Petitioner in cash, representing one-half of $12,866.85 from bank accounts listed as Items 1, 3, 4, and 5" in the husband's amended inventory and appraisal. The amounts listed as Items 1, 3, 4, and 5 aggregate the sum of $21,651.26. However, in the husband's sworn amended inventory and appraisal it was noted that $8,784.41 "was taken from personal account and used for community purposes." The husband then deducted this amount from the total of Items 1, 3, 4, and 5 leaving the "bottom-line" figure of $12,866.85 which the trial court divided equally between the parties in its decree. Apparently the trial court recognized the $8,784.41 as an offset

in favor of the husband for money taken from his separate account and used for community purposes. In its findings of fact the trial court listed the same four amounts as listed by the husband in Items 1, 3, 4, and 5 and their sum, $21,651.26, shown in the amended inventory and appraisal as community property, without notation as to the $8,784.41 offset included in the sworn amended inventory and appraisal and allowed as a deduction in the judgment.

We observe that prior to this appeal the wife did not challenge or request any change in the sworn amended inventory and appraisal containing the notation as to the above mentioned $8,784.41 offset against the community bank accounts. Further, no specific reference was made to the matter in the wife's motion for new trial. Moreover, the wife made no request for additional or amended findings of facts or conclusions of law.

The disposition of the community bank accounts made by the trial court in the judgment is supported by the sworn amended inventory and appraisal filed by the husband pursuant to the request of the court. Therefore, we cannot say the court abused its discretion in its disposition of the community bank accounts. Cross-point number 2 is overruled.

In her third cross-point, the wife contends that the trial court erred in designating two certain bank accounts as the separate property of the husband and in awarding him the total sum of $26,812.30 contained in these two accounts. The amounts awarded were claimed and shown by the husband as separate property in his sworn amended inventory and appraisal. As pointed out in connection with cross-point number 2, no objection was made to the sworn inventory and appraisal, the matter was not specifically included in the motion for new trial, nor were additional or amended findings of fact or conclusions of law requested with respect to the disposition of the accounts in question. Even though the sworn amended inventory and appraisal was at variance with the husband's original inventory and appraisal and

with previous evidence given, no objection was made to the procedure when it was apparent that the court would consider the amended instrument along with other evidence, and the trial court was entitled to determine whether the listing in the sworn amended inventory and appraisal was a proper characterization and valuation of the property in question. Even if the characterization of the accounts were as contended in the wife's brief, the trial court, in its sound discretion, was empowered to make such division or disposition of the property as it deemed just and fair to the parties. When considered in conjunction with the overall division of the property of the parties, there was no abuse of discretion in the designation and awarding of the bank accounts. The wife's cross-point number 3 is overruled.

In view of the foregoing, we find no reversible errors presented by the respective points and cross-points presented by the parties. Accordingly, the judgment of the trial court is affirmed.